Gen. 241]                                                                                    241

**OPEN MEETINGS ACT**

CONSTITUTIONAL LAW – STATUS OF TRAINING SESSIONS AND
    EDUCATIONAL CONFERENCES – JOB INTERVIEWS IN OPEN
    SESSION – STAFF MEETINGS IN ST. MARY'S COUNTY

December 20, 1995

*The Honorable Barbara R. Thompson*
*President, St. Mary's County Commissioners*

You have requested our opinion on three issues regarding open meetings:

1.    Does the Maryland Open Meetings Act or the St. Mary's County Open Meetings Act apply to attendance by a quorum of County Commissioners at "leadership and team-building training sessions" and at continuing education conferences of the Maryland Association of Counties?

2.    Would public notice of a meeting for the purpose of interviewing candidates for employment, or the conduct of the interviews themselves in open session, lead to liability for a breach of an applicant's constitutional right to privacy?

3.    Does the St. Mary's County Open Meetings Act apply to a meeting of two County Commissioners with the County Attorney, County Administrator, or other County employee?

Our opinion is as follows:

1.    Neither the State nor the St. Mary's County Open Meetings Act applies to training sessions aimed at improving interpersonal relations and leadership skills.  Whether either Act would apply to attendance by a quorum of county commissioners at a continuing education conference depends on the conference's topic and its relation to matters before the County Commissioners.

2.    The County Commissioners have the discretion to deal with personnel matters, including applications for employment, in open session.  A job applicant has no constitutional right to privacy in the hiring process.

3.    The St. Mary's County Open Meetings Act does not apply to a meeting among two County Commissioners and a county employee.

# I

## Training Sessions

In an era when governments at all levels place a premium on managerial effectiveness, senior government officials sometimes attend training sessions aimed at improving their leadership skills and capacity to work as part of a team.  Boards of county commissioners, responsible as they are for the effective operation of county government, might well benefit from training of this kind.  Yet training that tries to address the personal attributes and styles of senior officials might well be hampered, many believe, if it were conducted under the gaze of press and public.

The Maryland Open Meetings Act (hereafter "State Act") applies only to "meetings" of public bodies.[1]  The term "meet" means "to convene a quorum of a public body for the consideration or transaction of public business." §10-502(g) of the State Government ("SG") Article, Maryland Code.  While the term "public business" is not itself defined, it surely refers to "the phases of the deliberation, policy formation, and decision making of public bodies" that the public is generally entitled to observe.  SG §10-501(b)(1).  Conversely, the term "public business" does not refer to any "chance encounter, social gathering, or other occasion that is not intended to circumvent [the State Act]."  SG §10-503(a)(2).

In our opinion, a training session aimed at improving leadership or team-building skills does not involve the conduct of public business.  Such training might ultimately make the County Commissioners more effective at conducting future public business,

---

[1] The Board of County Commissioners is a "public body." §10-502(h)(1) of the State Government Article, Maryland Code.

but it is not itself part of the policy-making process.  As this office observed in a recent publication on the State Act, "the Act would not apply to a retreat for purposes of team-building or improved interpersonal relations, but it would apply to a retreat at which items of public business are discussed."  Office of the Attorney General, *Open Meetings Act Manual* 8 (2d ed. 1995).  *See also* Open Meetings Compliance Board Opinions 95-7, at 3 (October 18, 1995) and 94-6, at 3-4 (August 16, 1994).

The same analysis would apply to a continuing education conference.  If the conference concerns a topic of general interest, even one that might affect how the County Commissioners would view a future policy issue, the educational session itself would not involve the conduct of public business, for the session would be too remote from any actual decision-making process.  However, if the educational session were focused on a topic that was then before the County Commissioners in some specific way, the session might well be considered part of the conduct of public business:

> "In this regard," the Court of Appeals has observed, "it is clear that the Act applies, not only to final decisions made by the public body exercising legislative functions at a public meeting, but as well as to all deliberations which precede the actual legislative act or decision, unless authorized by [the Act] to be closed to the public." *City of New Carrolton v. Rodgers*, 287 Md. 56, 72, 410 A.2d 1070 (1980).  This reasoning applies as well to briefings or other information-gathering.  This often critical phase of the decision-making process must also be open to public view.

*Open Meetings Act Manual* at 7.

We reach the same conclusion about the St. Mary's County Open Meetings Act (hereafter "St. Mary's County Act"), codified as Title 4, Subtitle 2 of Article 24.  Under Article 24, §4-203(a), and with certain exceptions, "all meetings of a public agency at which official action is taken regarding public business are open to the

public ...."[2]  Through its definition of "official action," the St. Mary's County Act, like the State Act, extends to all phases of the decision-making process: "'Official action' means the phases of the process in which a decision or recommendation is reached including receipt of information, deliberation and decision of a public agency." §4-202(e).  Unlike the State Act, but with essentially the same result, the St. Mary's County Act defines "public business": "'Public business' means all matters within the jurisdiction of a public agency which are before an agency for official action or which reasonably, foreseeably may come before that agency in the future." §4-202(d).

This definition does not apply to a training session aimed at improving interpersonal relations and team-building skills.  While the skills that the Commissioners might learn may enable them to better handle the "matters" which are or will be before them "for official action,"  the activities at the training itself would not constitute "public business."

With respect to continuing education sessions, again the analysis is essentially the same as under the State Act.  Such a session might or might not involve the "public business," depending on the relationship between the substance of the educational session and any particular matter pending or foreseeably coming to the Commissioners for decision.

## II

### Privacy of Job Applicants

The State Act permits, but does not require, a public body to meet in closed session when it is discussing "the appointment [or] employment ... of appointees, employees, or officials over whom it has jurisdiction ... or ... any other personnel matter that affects 1 or more specific individuals."  SG §10-508(a)(1).  Likewise, the St. Mary's County Act permits, but does not require, a closed session to "consider or discuss the ... appointment of a member of a public

---

[2] The Board of County Commissioners is a "public agency."  *See* §4-202(b)(1).

agency or employee ...." Article 24, §4-210(a)(1).[3]  Both the State and the St. Mary's County Acts also authorize a closed meeting when federal law would prohibit an open meeting.  SG §10-508(a)(13); Article 24, §4-210(a)(4).

Your question presumes that the County Commissioners might wish to conduct an interview of a job applicant in open session.[4]  You ask whether such an open session would violate  the constitutional right of a job applicant to maintain the privacy of facts related to the application.

In our opinion, there is no such right in the federal Constitution.[5]  The Constitution contains no broad right to privacy akin to a broad right of free speech.  Rather, the Constitution protects certain specific, highly personal activities under a substantive due process or equal protection "right to privacy" theory.  *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (abortion decision); *Loving v. Virginia*, 388 U.S. 1 (1967) (choice of marriage partner); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (use of contraceptives).

It is true that, in one case, the Supreme Court spoke more broadly of a right to the privacy of personal information: "The cases sometimes characterized as protecting 'privacy' have in fact involved two different kinds of interests.  One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."  *Whalen v. Roe*, 429 U.S. 589, 598-99 (1977).  In a footnote to this passage, the Court quoted a law professor's comment

---

[3] The session must be open if the individual requests an open session in writing.

[4] You also ask about notice of a meeting that would describe the topic in sufficient detail so as to enable members of the public, through one means or another, to find out the identity of a job applicant.  In light of our discussion in the text about the legality of open job interviews, we need not discuss separately the issue of notice.

[5] Nor is there such a right in the Maryland Constitution, which "includes no explicit protection of the right of privacy .... [T]he Court of Appeals has not yet identified any right of privacy protected by the Maryland Constitution."  74 *Opinions of the Attorney General* 19, 30 (1989).

that, although "[t]he concept of a constitutional right of privacy still remains largely undefined," one facet of the right that has been "partially revealed" is this: "The right of an individual not to have his private affairs made public by the government." 429 U.S. at 599 n. 24. Despite this broad language, which can best be characterized as a summary of one party's argument, the Supreme Court held that the information in question — medical treatment information — *could* lawfully be required to be disclosed to a state. To be sure, the state itself guaranteed the confidentiality of the information, and no public disclosure was involved. However, the case does not stand for the settled proposition that an individual has a constitutional right to prevent a government agency from making public personal information about a citizen.

Moreover, even if there were such a right, it is hard for us to see how a job applicant could enforce it if the applicant were told that, as a condition of the application, a public discussion by the County Commissioners might occur. The applicant's decision to proceed with the application would amount to a waiver of any constitutional right to privacy. *See generally Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (whether there is "intelligent waiver" of a constitutional right depends on "particular facts and circumstances").

In short, the Constitution does not prevent the St. Mary's County Board of County Commissioners from holding an open session to discussion the merits of a particular job application.[6]

## III

### "Staff Meetings"

Unlike the State Act, the St. Mary's County Act generally applies to "staff meetings." The term "staff meeting" is defined as "a meeting of three or more staff members or a combination of three or more staff members of a public agency." Article 24, §4-202(f).

---

[6] We do not discuss the policy wisdom of such an approach. Nor are we called upon to consider whether the County Commissioners might risk liability under a non-constitutional cause of action. *Cf.* SG §10-626 (cause of action for unlawful disclosure of personal records).

The St. Mary's County Act does not define the term "staff member." However, the customary meaning of the term is an assistant to or employee of a superior body. *See Beta Nu Chapter v. Smith,* 89 N.E.2d 722, 724 (Ind. App. 1950); *Random House Dictionary of the English Language* 1853 (2d ed. 1987). Indeed, the text of the St. Mary's County Act reflects this common meaning, because it requires "[s]taff meetings *of a public agency* [to be] open to the public." §4-203(b). The St. Mary's County Board of Commissioners is the relevant "public agency." The "staff members of a public agency" who might hold a "staff meeting" are the employees who are answerable to the County Commissioners. The term does not extend to the County Commissioners themselves.

Therefore, a meeting among two County Commissioners and a staff member would be neither a meeting of the County Commissioners, because no quorum would be present, nor a "staff meeting," because it was not a meeting of three or more staff members.

## IV

### Conclusion

In summary, it is our opinion that:

1. Neither the State nor the St. Mary's County Open Meetings Act applies to training sessions aimed at improving interpersonal relations and leadership skills. Whether either Act would apply to attendance by a quorum of county commissioners at a continuing education conference depends on the conference's topic and its relation to matters before the County Commissioners.

2. The County Commissioners have the discretion to deal with personnel matters, including applications for employment, in open session. A job applicant has no constitutional right to privacy in the hiring process.

3.    The St. Mary's County Open Meetings Act does not apply to a meeting among two County Commissioners and a county employee.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*